FILED FILED
CLERK, U.S. DISTRICT COURT

FEB - 5 2003

CENTRAL DISTRICT OF CALIFORNIA
BY                                DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ex rel. RICHARD D. BAGLEY, | ) ) ) | |
| Plaintiff, | ) ) | No. CV 95-4153-AHM(AJWx) |
| v. | ) ) ) | |
| TRW Inc., | ) ) ) ) | MEMORANDUM AND ORDER REGARDING DEFENDANT'S MOTION TO COMPEL PRODUCTION OF DISCLOSURE STATEMENTS |
| Defendant. | ) ) ) | |

ENTER ON ICMS

FEB ⁼5 2003

Before the court is defendant TRW Inc.'s motion to compel plaintiff United States of America ("the government" or "plaintiff") and relator Richard D. Bagley ("relator") (collectively, "plaintiffs") to produce several disclosure statements prepared by relator and his counsel and provided to plaintiff in compliance with the False Claims Act (the "Act"). See 31 U.S.C. § 3730(b)(2). The court has considered the papers filed by the parties (including the supplemental papers filed as recently as September 2002), and the arguments made by counsel during the hearing on the motion.

Section 3729 of the Act prohibits the knowing presentation of a false claim for payment to an officer or employee of the government. See 31 U.S.C. § 3729(a). The Act authorizes a person (the relator) to file a civil action alleging a violation of section 3729 on behalf of the person and the government. See 31 U.S.C. § 3730(b)(1). The Act, however, requires that the person serve on the

1

government a "written disclosure of substantially all material evidence and information the person possesses" along with a copy of the complaint. 31 U.S.C. § 3730(b)(2). The purpose of the written disclosure requirement "is to provide the United States with enough information on alleged fraud to be able to make a well reasoned decision on whether it should participate in the filed lawsuit or allow the relator to proceed alone." United States ex rel. Woodard v. Country View Care Center, Inc., 797 F.2d 888, 892 (10th Cir.1986) (construing section 3730(b) prior to its amendment in 1986); accord, United States ex rel. Koch v. Koch Industries, Inc., 1995 WL 812134, at *9 & n.11 (N.D. Okla. 1995); United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Blue Cross Blue Shield of Georgia, Inc., 755 F.Supp. 1040, 1053 (S.D. Ga. 1990); see generally United States ex rel. Purcell v. MWI Corp., 209 F.R.D. 21, 26 (D.D.C. 2002) ("The FCA aims to advance the twin goals of (1) rejecting suits which the government is capable of pursuing itself while *(2) promoting those which the government is not equipped to bring on its own.")* (emphasis in original) .

Few reported decisions construe the nature and extent of the relator's disclosure obligation under section 3730(b)(2). See, e.g., United States ex rel. Made in the USA Foundation v. Billington, 985 F.Supp. 604, 608 (D. Md. 1997) (noting that "scant authority exists delineating what constitutes" a legally sufficient disclosure statement). Some decisions have suggested that a disclosure statement should contain only facts. See United States ex rel. O'Keefe v. McDonnell Douglas Corp., 918 F.Supp. 1338, 1346 (E.D. Mo. 1996) ("The written disclosure statement should simply contain all the relevant factual information in [the relator's] possession at the time he filed suit."); United States ex rel. Burns v. A.D. Roe Co., 904 F.Supp. 592, 594 (W.D. Ky. 1995) (explaining that a disclosure statement "is simply a recitation of factual information"); United States ex rel. Robinson v. Northrop Corp., 824 F.Supp. 830, 838-839 (N.D. Ill. 1993) (stating that the disclosure obligation "requires only a statement of facts," and concluding that a disclosure statement "should not contain opinions of an attorney"); United States ex rel. Stone v. Rockwell Intern. Corp., 144 F.R.D. 396, 401 (D. Colo. 1992) (stating that a written disclosure statement "contains nothing more than the evidence and information which must come to light in any event once the case proceeds"). Other courts, by contrast, have recognized that a disclosure statement may include additional information, such as legal theories, analysis, and opinion. See, e.g., Made in the USA Foundation, 985 F.Supp. at 608 (explaining that a disclosure statement "should, at

2

1  a minimum, comprise much of what [the relator] will rely upon to support the contentions in the case

2  at bar. . . . While not a prerequisite necessary to satisfy the disclosure requirement, the Court believes

3  more than a mere recitation of facts, available to the government, is required.")(internal quotation marks

4  and citations omitted); United States ex rel. Grand v. Northrop Corp., 811 F. Supp. 333, 337 (S.D.

5  Ohio 1992) (acknowledging the possibility that the disclosure statement at issue might contain legal

6  analysis and opinion in addition to facts). This inconsistency in the reported decisions finds a parallel

7  in the practices of relators' counsel, who invest different levels of effort in preparing disclosure

8  statements. See Eric R. Havian, Discoverability of Statutory Disclosure Statement and Recovery of

9  Statutory Attorneys' Fees in False Claims Act Qui Tam Cases, N98CFCB ABA-LGLED L-13, L-15

10  (November 19-20, 1998) (noting that some counsel representing a relator "prepare very detailed

11  narratives of the evidence, including analysis by counsel of the legal and factual issues in the case and

12  suggestions to the government regarding how to pursue its investigation. Obviously, the government

13  greatly appreciates such efforts, which simplify the task of sorting through an increasing number of qui

14  tam complaints. At the other end of the spectrum, some attorneys simply place a cover sheet on an

15  undifferentiated stack of documents and allow the government to sort it out.")(footnote omitted).

16  　　　　Of the two views, the one favoring inclusion of analysis as well as facts seems more consonant

17  with the purpose of section 3730(b)(2). As one commentator has observed, courts construing section

18  3730(b)(2) to permit only factual disclosures

19  　　　　　　overlook the fact that the Disclosure Statement is much more than a mere recitation of

20  　　　　　　evidence. Ideally, the Disclosure Statement distills often complex facts and law into a

21  　　　　　　narrative statement intended to inform the government of the nature of the claims the

22  　　　　　　relator asserts on its behalf. There is no support for the suggestion that Congress

23  　　　　　　intended otherwise. As one of the authors of the 1968 amendments to the False Claims

24  　　　　　　Act stated,

25  　　　　　　　　The law that we vote on today is intended to encourage a working

26  　　　　　　　　partnership between both the Government and the qui tam plaintiff. The

27  　　　　　　　　public will be served by having more legal resources brought to bear

28  　　　　　　　　against those who defraud the Government. . . . This is precisely what the

1         law is intended to do: deputize ready and able people who have knowledge

2         of fraud against the government to play an active and constructive role

3         through their counsel to bring to justice those contractors who overcharge

4         the government.

5         It promotes, rather than undermines that congressional purpose if the Disclosure

6         Statement provides the Justice Department with a complete analysis of the factual and

7         legal issues in the case.

8 Havian, supra, at L-13 (quoting 132 Cong. Rec. H9388 (October 7, 1986) (statement of Representative

9 Berman)); see also S. Report No. 345, 99th Cong., 2nd Sess., at 2 (1986), reprinted in 1986

10 U.S.C.C.A.N. 5266, 5272 ("[P]erhaps the most serious problem plaguing effective enforcement is a lack

11 of resources on the part of Federal enforcement agencies. . . . Federal auditors, investigators, and

12 attorneys are forced to make 'screening' decisions based on resource factors. Allegations that perhaps

13 could develop into very significant cases are often left unaddressed at the outset due to a judgment that

14 devoting scarce resources to a questionable case may not be efficient.")(footnoted omitted); 132 Cong.

15 Rec. H9388 (October 7, 1986) (statement of Representative Berman) (explaining that with certain

16 exceptions prescribed by statute, the court should fix the relator's share of a damages award substantially

17 above the statutory minimum and as high as the prescribed maximum "where the person carefully

18 develops all the facts and supporting documentation necessary to make the case and presents it in a

19 thorough and detailed fashion to the Justice Department as required by law, and where that person

20 continues to play an active and constructive role in the litigation that leads ultimately to a successful

21 recovery to the United States Treasury"). The statutory purpose of the disclosure requirement, then,

22 is best served by treating disclosure statements in a manner that encourages the relator or his or her

23 counsel to make them as complete, detailed, and thoughtful as possible.

24     A relator preparing a disclosure statement today, however, is in a bind. In one sense it is in the

25 relator's selfish best interest to make his or her disclosure statement as complete, well-organized, and

26 persuasive as possible. Otherwise, the relator runs the risk that the government may decline to intervene

27 (in which case the expense and burden of prosecuting the action alone may be prohibitive for the

28 relator), or that the government may move to dismiss the action on one of the grounds enumerated in

1 | the statute. The inadequacy of the relator's disclosure is one such ground for dismissal. See 31 U.S.C.

2 | § 3730(b)(2)&(e); Made in the USA Foundation, 985 F.Supp. at 608-609 (dismissing the relators' claim

3 | because they did not provide the government with an adequate disclosure statement); see generally

4 | Robert Salcido, The Government Declares War on Qui Tam Plaintiffs Who Lack Inside Information:

5 | The Government's New Policy to Dismiss These Parties in False Claims Act Litigation, 13 No. 1 Health

6 | Law. 1, 4 (October 2000).[1] On the other hand, it also is in the relator's selfish best interest to avoid full

7

---

8 | [1] Prior to its amendment in 1986, the Act provided that if the government did not intervene, "the court shall dismiss an action brought by the person on discovering the action is based on evidence or information the Government had when the action was brought." See Historical and Statutory Note foll. 31 U.S.C. § 3730; Woodard, 797 F.2d at 892. That provision was located in section 3730(b), which also contained the written disclosure requirement. See 31 U.S.C. § 3730(b)(2)&(b)(4) (1985). Thus, a secondary purpose for the disclosure requirement before 1986 was "to allow the government to determine whether it previously possessed the information on which the suit is based thereby giving the government an opportunity to defeat the district court's jurisdiction over the qui tam action." Woodard, 797 F.2d at 892.

Contrary to defendant's argument, former subsection (b)(4) is inapplicable because "Congress amended the [Act] in 1986 ... to permit qui tam suits based on information in the Government's possession, except where the suit was based on information that had been publicly disclosed and was not brought by an original source of the information." Hughes Aircraft Co. v. United States ex rel. Schumer, 520 U.S. 939, 946 (1997) (citing 31 U.S.C. § 3730(e)(4)(A)). Subsection(e), which was added to section 3730 by the 1986 amendments, provides that district courts lack jurisdiction over certain qui tam actions, including those based on allegations or transactions which are the subject or a civil suit or administrative proceeding in which the government already is a party and those based on the "public disclosure" of allegations in specified fora when the relator is not the "original source" of the information. See 31 U.S.C. § 3730(e).

To the extent that defendant argues that discovery of the disclosure statements should be allowed to enable a defendant to challenge a relator's standing, that argument is rejected. First, defendant does not argue that any bar enumerated in section 3730(e) applies to this case. Second, defendant has cited no controlling authority to support its position, and the court is not aware of any. Third, the relator's disclosure obligation "inures to the benefit of the government," not to the benefit of the defendant. Stinson, Lyons, et al., 755 F.Supp. at 1054 (explaining that as to the defendant, the written disclosure "is neither a right or a remedy. It is an ancillary procedural requirement of the exercise of the right created by the statute."). The government has both the ability and the incentive to invoke section 3730(e) when it would bar the relator's action. Fourth, there is no basis for concluding that defendants in qui tam actions are entitled, or need, to discover the disclosure statement in order to mount a jurisdictional challenge. Like other civil litigants, a qui tam defendant can look to the complaint, which must be pleaded with particularity in compliance with Rule 9(b) of the Federal Rules of Civil Procedure. See Stinson, Lyons, et al., 755 F.Supp. at 1052-1053 (holding that a qui tam complaint failed to satisfy Rule 9(b), which exists "to eliminate fraud actions in which all the facts are learned through discovery after the complaint is filed" and to protect against frivolous lawsuits). In addition, the

1  and candid discussion the strengths or weaknesses of his or her claims in a disclosure statement if there

2  is a risk that it may have to be turned over to the defendant. Forcing the relator to navigate unerringly

3  at his or her peril the narrow passage between the Scylla of too little disclosure and the Charybdis of too

4  much disclosure may be unfair and probably makes little sense. If the purpose of the disclosure

5  requirement–to place in the hands of the government information from which it can promptly and

6  efficiently make a sound determination about to whether to intervene–is to be promoted, it is necessary

7  that relator's counsel be able to predict with a high level of confidence ex ante whether material

8  contained in disclosure statements will have to be turned over to defendants. An ex post test, the

9  outcome of which cannot be predicted with a high level of confidence ex ante, is undesirable because if

10  there is uncertainty about the matter, then relators' counsel may skimp on the contents of disclosure

11  statements, thereby lessening their value as a screening tool for the government. Therefore, leaving open

12  the question whether disclosure statements–or particular sentences contained therein–must be turned

13  over to a qui tam defendant will tend to defeat the goals of section 3730(b)(2). Accordingly, the

14  statutory purpose of the disclosure requirement is best promoted by a bright-line rule precluding

15  discovery of all portions of disclosure statements or drafts thereof.

16     No such bright-line rule shielding disclosure statements from discovery presently exists. The Act

17  itself does not explicitly prohibit discovery of disclosure statements. See O'Keefe, 818 F.Supp. at 1345-

18  46 (explaining that because "[t]he statute simply does not address the issue of discoverability," the court

19  "will be guided by" the federal rules governing discovery); see also Burns, 904 F.Supp. at 593 (stating

20  that the Act does not state or suggest that disclosure statements are privileged); Stone, 144 F.R.D. at

21

22  defendant has recourse to ordinary disclosure and discovery procedures to ascertain the facts
23  relating to subject matter jurisdiction. See generally Fed.R.Civ.P. 26. Thus, there is no reason
    to assume that a defendant would be unable to challenge the relator's standing without access
24  to the disclosure statement. Finally, there appear to be few circumstances in which a defendant
    could not obtain the information relevant to a section 3730(e) challenge from sources other than
25  the disclosure statement. If, however, such a challenge could not be resolved without recourse
26  to information contained in a disclosure statement, the court would not be prohibited from
    reviewing the document in camera or from ordering appropriate disclosure in that "rare and
27  extraordinary" circumstance. See United States ex rel. Burroughs v. DeNardi Corp., 167 F.R.D.
    680, 683-684 (S.D. Cal. 1996).
28

6

1 | 398-399 (stating that "nothing in the language of the statute" supports the notion that there is a

2 | statutory prohibition against producing disclosure statements to a defendant). In addition, reported

3 | decisions expressly addressing the issue uniformly have concluded that disclosure statements are not

4 | protected by the attorney-client privilege.  See, e.g., United States ex rel. Burroughs v. DeNardi Corp.,

5 | 167 F.R.D. 680, 682-683 (S.D. Cal. 1996) (holding that the communications contained in the relator's

6 | disclosure statements were not protected by the attorney-client privilege because they were neither made

7 | in confidence nor made for the purpose of seeking legal advice); Burns, 904 F.Supp. at 594 (same);

8 | Stone, 144 F.R.D. at 399-400 (same).[2]

9 |       Plaintiffs contend, however, that disclosure statements are protected from discovery by the

10 | attorney work product doctrine.  See Fed.R.Civ.P. 26(b)(3). In response, defendant argues that

11 | disclosure statements do not qualify as attorney work product, and that even if they did, defendant has

12 | demonstrated "substantial need" justifying discovery of the factual information contained in them.

13 |       Rule 26(b)(3) of the Federal Rules of Civil Procedure provides, in relevant part:

14 |       [A] party may obtain discovery of documents and tangible things otherwise discoverable

15 |       under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial

16 |       by or for another party or by or for that other party's representative . . . only upon a

17 |       showing that the party seeking discovery has substantial need of the materials in the

18 |       preparation of the party's case and that the party is unable without undue hardship to

19 |       obtain the substantial equivalent of the materials by other means. In ordering discovery

20 |       of such materials when the required showing has been made, the court shall protect

21 |       against disclosure of the mental impressions, conclusions, opinions, or legal theories of

22 |       an attorney or other representative of a party concerning the litigation.

23 | Fed.R.Civ.P. 26(b)(3); see Griffith v. Davis, 161 F.R.D. 687, 698 (C.D. Cal. 1995) (discussing Rule

24 | 26(b)(3)). "Work product protection is designed to preserve the privacy of attorneys' thought processes,

25 | and to prevent parties from 'borrowing the wits of their adversaries.'" William W Schwarzer, A. Wallace

26 | _____

27 |    [2]  In one unreported decision, United States ex rel. Taxpayers Against Fraud v. Litton
Systems, Inc., CV 88-2276 (C.D. Cal. 1990), the court held that the relators' written disclosures

28 | were protected both by the work product doctrine and the attorney-client privilege.

1  Tashima & James M. Wagstaffe, <u>Rutter Group Practice Guide: Federal Civil Procedure Before Trial</u> ¶

2  11:39 (2002)(citing <u>Hickman v. Taylor</u>, 329 U.S. 495, 511 (1947) and <u>Holmgren v. State Farm Mut.</u>

3  <u>Auto. Ins. Co.</u>, 976 F.2d 573, 576 (9th Cir. 1992)). Work product may include documents prepared

4  by a party, as well as by the party's attorney. <u>See</u> <u>Admiral Ins. Co. v. U.S. Dist. Court for Dist. of</u>

5  <u>Arizona</u>, 881 F.2d 1486, 494 (9th Cir. 1989) ("The work-product rule is not a privilege but a qualified

6  immunity protecting from discovery documents and tangible things prepared by a party or his

7  representative in anticipation of litigation.") (citing Fed.R.Civ.P. 26(b)(3)); <u>United States v.</u>

8  <u>Medica-Rents Co.</u>, 2002 WL 1483085, at *2 n.5 (N.D. Tex. 2002) ("The work-product doctrine

9  extends to documents prepared for litigation or trial by the adverse party himself.") (citing <u>Aiken v.</u>

10 <u>Texas Farm Bureau Mutual Insurance Co.</u>, 151 F.R.D. 621, 624 n.4 (E.D. Tex. 1993)). Rule 26(b)(3)

11 distinguishes between "opinion" work product, which consists of the "mental impressions, conclusions,

12 or legal theories of an attorney or other representative of a party," and "ordinary" or "factual" work

13 product, which consists of factual material prepared in anticipation of litigation or trial. <u>See, e.g.</u>,

14 <u>Burroughs</u>, 167 F.R.D. at 684; <u>Stone</u>, 144 F.R.D. at 401. Absent a waiver, opinion work product enjoys

15 nearly absolute protection and is discoverable only in "rare and extraordinary circumstances," while

16 ordinary work product is discoverable upon a showing of "substantial need" and "undue hardship."

17 <u>Burroughs</u>, 167 F.R.D. at 683-684; <u>see</u> <u>Holmgren</u>, 976 F.2d at 576-577 (holding that opinion work

18 product "may be discovered and admitted when mental impressions are *at issue* in a case and the need

19 for the material is compelling," and stating that such a determination must be made on a case by case

20 basis) (emphasis in original).

21      Most courts considering the application of the attorney work product doctrine have held that

22 disclosure statements prepared pursuant to section 3730(b)(2) were work product because they were

23 prepared "in anticipation of litigation." <u>See</u> <u>Burroughs</u>, 167 F.R.D. at 683-685 (holding that even if the

24 disclosure statement was not opinion work product, it was ordinary work product because it was

25 prepared in anticipation of litigation); <u>O'Keefe</u>, 918 F.Supp. at 1346 (holding that a disclosure

26 statement is work product because "[t]he plain language of the [Act] requires the relator to prepare the

27 document 'in anticipation of litigation'")(citing 31 U.S.C. § 3730(b)(2)); <u>Burns</u>, 904 F.Supp. at 594

28 (indicating that a disclosure statement was work product, but that defendants had made a sufficient

1  showing to justify disclosure)[3]; Stone, 144 F.R.D. at 401 (classifying a disclosure statement as "factual

2  work product"); see also Grand, 811 F.Supp. at 337 (ordering production of a disclosure statement after

3  redaction of the opinions and analysis of the relator's counsel, but without expressly stating that the

4  disclosure statement was work product).[4] Those decisions, however, do not address two issues that

5  might affect the availability of work product protection.

6        The first issue arises from the dual function served by disclosure statements. Although disclosure

7  statements undoubtedly are prepared "in anticipation of litigation," they also are prepared for another

8  purpose: to satisfy the statutory disclosure requirement which is a prerequisite to suit. If a document

9  is created both in anticipation of litigation and for a distinct, unrelated purpose, the "policies that inspire

10 the work product doctrine are wholly inapplicable" because the document "would have been generated

11 whether or not litigation was pending . . . . " Griffith, 161 F.R.D. at 699 (citing Kelly v. City of San

12 Jose, 114 F.R.D. 653, 659 (N.D. Cal. 1987)). This case, however, is distinguishable from Griffith

13 because here the litigation purpose and the "non-litigation" purpose are inseparably intertwined.

14 Although required by statute, disclosure statements would not be created "but for" the prospect of

15 litigation, and they are prepared to aid the litigation of claims under the Act. Therefore, the fact that

16 they are required by statute does not rob disclosure statements of their work product status. See

17 Griffith, 161 F.R.D. at 698 (stating that "the *primary* motivating purpose behind the creation of the

18 _____

19   [3]   In Burns, the court prefaced its discussion of the attorney work product doctrine by
   stating that the disclosure statement was not "attorney work product." The court's analysis,
20   however, suggests that it concluded that the statement was factual work product, but
   nevertheless was discoverable because of the defendants' showing of need and hardship. See
21   Burns, 904 F.Supp. at 594.

22   [4]   In Robinson, 824 F.Supp. at 838-839, the court granted the defendant's motion to
23   compel production of a disclosure statement "[b]ecause the document should not contain
   opinions of an attorney, and because it already has been shown to persons other than plaintiffs
24   and their representatives," that is, to the government. The court did not explain whether it
   concluded that the disclosure statement was not work product, or that it was work product, but
25   that the plaintiffs nevertheless were required to produce it. The court, however, cited cases
26   holding that the disclosure statement was work product, and it also noted that the plaintiffs had
   not requested redaction of their attorneys' analysis and opinions in the event the disclosure
27   statement was ordered to be produced. Robinson, 824 F.Supp. at 839 (citing Stone, 144 F.R.D.
   at 401 and Grand, 811 F.Supp. at 337). Therefore, it appears that the court assumed that the
28   disclosure statement was work product, but concluded that it was not shielded from discovery.

1 materials must be as an aid in possible future litigation")(emphasis in original); <u>Colonial Gas Co. v.</u>

2 <u>Aetna Cas. & Sur. Co.</u>, 144 F.R.D. 600, 605 (D. Mass. 1992) ("The pertinent test is: whether in light

3 of the nature of the document and the factual situation in the particular case the document can fairly

4 be said to have been prepared or obtained because of the prospect of litigation."); <u>cf.</u> <u>United States v.</u>

5 <u>Adlman</u>, 134 F.3d 1194, 1195 (2d Cir. 1998) ("[A] document created because of anticipated litigation

6 . . . does not lose work-product protection merely because it is intended to assist in the making of a

7 business decision influenced by the likely outcome of the anticipated litigation. Where a document was

8 created because of anticipated litigation, and would not have been prepared in substantially similar form

9 but for the prospect of that litigation, it falls within Rule 26(b)(3)."). Moreover, in this case, unlike the

10 situation presented in <u>Griffith</u>, there is a strong statutory policy of encouraging full disclosure to the

11 government–an entity which, in the memorable words of Representative Berman–is intended to be part

12 of a "working partnership" with the relator.

13       The second issue is whether relators have waived work product protection by providing the

14 disclosure statements to the government. A "primary function" of the work product doctrine "is to

15 prevent a current or potential adversary in litigation from gaining access to the fruits of counsel's

16 investigative and analytical effort, and strategies for developing and presenting the client's case."

17 <u>Burroughs</u>, 167 F.R.D. at 685. Therefore, a waiver may occur when a party discloses work product in

18 a manner that "increase[s] the likelihood that a current or potential opponent in the litigation would

19 gain access to the documents in question." <u>Burroughs</u>, 167 F.R.D. at 685 (citing <u>Bank of the West v.</u>

20 <u>Valley National Bank</u>, 132 F.R.D. 250, 262 (N.D. Cal. 1990) and <u>In re Subpoenas Duces Tecum</u>, 738

21 F.2d 1367, 1374-1375 (D.C. Cir. 1984)); <u>see also</u> <u>In re Columbia/HCA Healthcare Corp. Billing</u>

22 <u>Practices Litigation</u>, 293 F.3d 289, 304-307 (6th Cir. 2002) (discussing waiver of work product

23 protection), <u>petition for cert. filed</u>, 71 U.S.L.W. 3429 (Dec. 9, 2002) (No. 02-888).

24       At the time a disclosure statement is prepared pursuant to section 3730(b)(2), the government

25 has not intervened and is not a co-party. The government may decline to intervene, and it subsequently

26 may take actions adverse to the relator, such as moving to dismiss or contesting the relator's share of any

27 recovery. Nonetheless, it would be antithetical to the language and purposes of the Act to characterize

28 the government as an adversary or potential adversary of the relator at the time when the required

1  written disclosure occurs.  As one court observed:

2    [B]y the very language of the [Act], Congress has made it clear that it intended to align

3    the interests of the relator with the interests of the government in these cases.  By

4    allowing the relator to bring the action "in the name of the Government" and by allowing

5    the relator to receive a percentage of the proceeds that the government recovers, the

6    legislature left no doubt that the relator is acting on behalf of the government.  Indeed,

7    the [qui tam] plaintiff and the government essentially stand in the same shoes as against

8    the defendants. . . .  Additionally, the statute promotes only those cases in which the

9    government works together with the relator . . . .

10  Purcell, 209 F.R.D. at 26 (internal quotation marks and citations omitted).  Furthermore, complying

11  with the disclosure obligation is distinguishable from voluntarily disclosing information to an adverse

12  party in order to gain some strategic benefit or tactical advantage.  See, e.g., In re Columbia/HCA

13  Healthcare Corp., 293 F.3d at 305-306 (holding that a healthcare provider's disclosure of documents

14  to a government agency investigating it waived work product protection for those documents in

15  subsequent civil litigation).  Although the relator voluntarily initiates a qui tam action, finding a waiver

16  would frustrate the purposes of the Act because it would penalize the relator for doing what he or she

17  legally is obliged to do in order to continue the suit, and discourages the sort of comprehensive disclosure

18  most likely to facilitate the government's evaluation of the merits and its choice about whether to

19  intervene.  See Purcell, 209 F.R.D. at 27 (explaining that "the unique relationship of the government

20  and the relator in qui tam cases requires the sharing of work product generated between the relator and

21  his attorney with the government in order for the case to proceed").

22    Although the government clearly is not intended to be adverse to the relator, there is some

23  indication that the government occasionally may provide a disclosure statement to a defendant.  See

24  Havian, supra, at L-17. [See also United States' Response to Request for Supplemental Information

25  Regarding United States' Past Production and Use of Relators' Disclosure Statements ("Plaintiff's

26  Supplemental Response") at 1-3].  In its' Supplemental Response, the government maintains that "(1)

27  relators' disclosure statements are very rarely produced by the United States to defendants absent a

28  Court Order or the permission of the relator and (2) relators' disclosure statements are, on rare

1  occasions, used adverse to the relators' interests." [Plaintiff's Supplemental Response at 2-3]. Examples

2  of uses adverse to the relator are: (a) to justify the government's position in a dispute over the relator's

3  share of a recovery, (b) to demonstrate that the relator is not the "original source" of the information

4  alleged in the complaint, and (c) to demonstrate that the relator's complaint should be dismissed for

5  failure to state a claim. [See Plaintiff's Supplemental Response at 2]. Although nothing of the sort has

6  happened in this case,  the court has no way of knowing precisely how frequently the government makes

7  use of disclosure statements in a manner adverse to the relator, or, perhaps more to the point, how often

8  such adverse use results in their disclosure to a defendant before liability has been determined.

9        As explained above, however, the relator and the government are not adverse when the required

10  disclosure occurs, and one of the purposes of the Act is to ally relators with the government to uncover

11  and remedy fraud against the government.  See United States ex rel. [Redacted] v. [Redacted], 209

12  F.R.D. 475, 479 & n.3 (D. Utah 2001) (holding that the substance of discussions between the

13  government and the relators incident to the government's investigation into the relator's claims were

14  protected work product because "[a]t this point in the litigation," the government and relators "share

15  a community of interest," even though their interests subsequently might diverge); cf. Griffith, 161

16  F.R.D. at 692 n.6 (noting that "the interests of the parties involved in a common defense need not be

17  identical" and "may even be adverse in some respects"). If, notwithstanding the intent of the Act,

18  disclosure statements often were revealed to the defendant by the government before liability was

19  determined, that might count in favor of finding a waiver.   Nothing in the record, however, suggests

20  that such disclosures are common. This is unsurprising because routinely revealing disclosure statements

21  to defendants would tend to discourage relators from preparing thorough and helpful disclosure

22  statements, thereby requiring that the government either expend additional resources investigating qui

23  tam cases or risk making unsound decisions about whether to intervene.  Since it is probable that the

24  government would provide a disclosure statement to the defendant only in unusual circumstances, the

25  opportunity for potential adversaries to obtain the information is not "substantially increased" by the

26  fact that the information is provided to the government in a disclosure statement.  See Griffith, 161

27  F.R.D. at 699 (quoting Samuels v. Mitchell, 155 F.R.D. 195, 200-201 (N.D. Cal. 1994)). Accordingly,

28  the relator's written disclosure to the government pursuant to section 3730(b)(2) does not operate as

1    a waiver of work product protection.

2    This result is consistent with several decisions holding that the "common interest" or "joint

3    prosecution" doctrine applies to prevent the relator's disclosures of work product (including the written

4    disclosure statement) to the government from operating as a waiver.  See Medica-Rents Co., 2002 WL

5    1483085, at *2 (holding that no waiver occurred because the joint prosecution privilege shielded the

6    relators' disclosures to the government of memoranda and other work product during the period when

7    the government was deciding whether to intervene); Purcell, 209 F.R.D. at 26-27 (noting that the

8    "weight of the limited authority favors the government's position that a joint-prosecutorial privilege

9    exists" between the government and the relator in qui tam cases, and holding that in cases in which the

10   government intervened, such a privilege exists and extends to disclosures of work product by the relator

11   and his counsel); United States ex rel. [Redacted], 209 F.R.D. at 478-479 (holding that the "common

12   interest doctrine" prevented disclosure of the content of discussions between the relators and the

13   government "in furtherance of the [government's] investigation" from constituting a waiver of work

14   product protection);  Burroughs, 167 F.R.D. at 685-686 (holding that the relator and the government

15   "are essentially the same party" and can assert a "joint prosecution privilege" to avoid a waiver of work

16   product immunity); see also Miller, Anderson, Nash, Yerke & Wiener v. United States Dep't of Energy,

17   499 F.Supp. 767, 771 (D. Or. 1980) (holding that a party did not waive the attorney-client privilege

18   by turning a privileged memorandum over to a government agency "with similar interests" which was

19   in the process of deciding whether or not to intervene in a lawsuit).

20   Defendant has represented, however, that plaintiffs already have provided defendant with

21   redacted versions of the disclosure statements regarding three of plaintiffs' claims. [See Joint Stipulation

22   at 2].  To the extent that the government or relator already has produced any disclosure statements to

23   defendant, whether in whole or in part (such as in redacted form), plaintiffs have waived work product

24   protection as to the portions already revealed to defendant.

25   Although the disclosure statements qualify as work product, the level of protection from

26   disclosure depends on whether they are characterized as "opinion" work product, "ordinary" work

27   product, or both.  The disclosure statements in this case were prepared by relator and his counsel. [See

28   Declaration of Jeffrey Wexler in Opposition to Motion to Compel at 3-5].  Plaintiff lodged the disclosure

1   statements (without the attached exhibits) under seal, and the court has reviewed them. The disclosure

2   statements consist of: (1) a narrative of the specific facts and evidence relator contended were material

3   to his claims; (2) an analysis of the facts and evidence in light of the legal standards relator deemed

4   relevant to show wrongdoing by defendant; and (3) a set of supporting exhibits.  Some, but not all, of

5   the disclosure statements include a discrete section that sets forth predominantly factual background,

6   but in all of them, facts are interwoven with analysis, opinion, and conclusions in other sections.

7        Analysis of the second and third components is unproblematic.  The second component–legal

8   analysis and opinion–plainly constitutes opinion work product because it consists of the "mental

9   impressions, conclusions, opinions, or legal theories" of relator and relator's counsel, and therefore

10  should be absolutely protected from disclosure. See Fed.R.Civ.P. 26(b); Burroughs, 167 F.R.D. at 684.

11  The third component–the supporting exhibits–is not at issue here. Plaintiffs have represented that all

12  of the documents attached as exhibits to the disclosure statements have been produced to defendant.

13  [See Joint Stipulation at 6 ¶ 13; Declaration of David W. Long in Opposition to Defendant's Motion

14  to Compel at ¶ 4].

15       Analysis of the first component–the narrative–is more challenging. At a minimum, the narrative

16  is "ordinary" work product entitled to qualified protection, but it arguably merits the even greater, nearly

17  absolute protection afforded to opinion work product.  Where the selection, organization, and

18  characterization of facts reveals the theories, opinions, or mental impressions of a party or the party's

19  representative, that material qualifies as opinion work product. See Burroughs, 167 F.R.D. at 684-685

20  (stating that if the "organization and characterization of the facts and evidence presented [in the

21  disclosure statement] would indeed reveal plaintiff's counsel's assessment of the strength of such facts

22  and evidence (which would, in turn, reveal plaintiff's counsel's mental impressions, opinions and theories

23  about the case)," then the disclosure statements would qualify as opinion work product, and observing

24  that although the court had not yet reviewed the documents, "it would difficult for the court to see how

25  the documents could be characterized as anything other than 'opinion-work product,' specifically

26  protected from disclosure . . . ."); see also Hickman, 329 U.S. at 510-511 ("Proper preparation of a

27  client's case demands that [an attorney] assemble information, sift what he considers to be the relevant

28  from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless

14

1  interference. . . .   This work is reflected, of course, in interviews, statements, memoranda,

2  correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible

3  ways . . . . "); Sporck v. Peil, 759 F.2d 312, 316 (3rd Cir.) (stating that "[o]pinion work product

4  includes such items as an attorney's legal strategy, his intended lines of proof, his evaluation of the

5  strengths and weaknesses of his case, and the inferences he draws from interviews of witnesses"), cert.

6  denied, 474 U.S. 903 (1985); Connolly Data Systems, Inc. v. Victor Technologies, Inc., 114 F.R.D. 89,

7  96 (S.D. Cal. 1987) (holding that under Rule 26(b)(3), the plaintiff's counsel could not attempt to elicit

8  "the facts to which [the defendant's] attorney appeared to attach significance or any other matter that

9  reveals [the defendant's] attorney's mental impressions, theories, conclusions or opinions concerning the

10  case").

11        In connection with a prior motion to compel discovery in a related case, defendant relied on this

12  same principle when it argued that the government should not be permitted to copy or record the

13  documents which defendant selected for copying from among the documents the government produced

14  in response to defendant's discovery requests. [See Order filed December 8, 1998, in United States ex

15  rel. Bagley, CV 94-7755 AHM (AJWx) ("Bagley I"), at 1 (attached as Ex. 1 to the Declaration of Eric

16  Havian in Opposition to Motion to Compel)].   In granting defendant's motion, the court noted that

17  there was no controlling authority on point and that persuasive authority was inconsistent, but that in

18  the court's view,

19            the selection of documents does convey information about an attorney's mental

20            impressions or strategy pertaining to a case, and therefore constitutes opinion work

21            product, although the extent to which it does so varies from case to case.  Sometimes the

22            light shed on the mental impressions of counsel by disclosure will be so dim as to be de

23            minimis, and reasonably may be subordinated to practical concerns.  In the circumstances

24            of this case, the document production procedure insisted upon by the government would

25            reveal the opinion work product of TRW's counsel and give the government a free ride

26            on the effort and investment of TRW's counsel in reviewing and selecting documents and

27            in preparing TRW's defense.

28  [Order filed December 8, 1998, in Bagley I at 1-2].  See also Shelton v. American Motors Corp., 805

1 F.2d 1323, 1327-1329 (8th Cir. 1986)(holding that defense counsel's awareness of the existence of

2 certain documents was work product because her "selective review" of documents in anticipation of

3 litigation "was based upon her professional judgment of the issues and defenses involved in this case,"

4 and therefore her mere acknowledgment that she remembered and was aware of those documents would

5 reveal her mental impressions); Sporck, 759 F.2d at 316 (holding that the defendant's counsel's

6 "selecting and ordering a few documents out of thousands . . . could not help but reveal important

7 aspects of his understanding of the case," and therefore that counsel's selection of documents constituted

8 "highly-protected" opinion work product); James Julian, Inc. v. Raytheon Co., 93 F.R.D. 138, 144 (D.

9 Del. 1982)(holding that a binder of documents selected by counsel was protected from disclosure

10 because "the process of selection and distillation is often more critical than pure legal research").

11 The principles set forth in the December 8, 1998, order apply not just to the selection and

12 organization of documents, but also to the selection, organization, and characterization of the facts

13 marshaled in support of relator's claims in the disclosure statements. If defendant's selection of

14 documents constitutes opinion work product, then the more subjective and analytical process of culling,

15 organizing, and summarizing the factual information presented in relator's disclosure statement deserves

16 the same level of protection. Cf. Montrose Chemical Corp. of California v. Train, 491 F.2d 63, 67-71

17 (D.C. Cir. 1974) (holding that summaries and analyses prepared by agency staff attorneys of evidence

18 adduced at a hearing were exempt from disclosure under the Freedom of Information Act because the

19 summaries revealed what facts the staff "cited, discarded, compared, evaluated, and analyzed to assist

20 the Administrator in formulating his decision," how the staff "exercis[ed] their judgment as to what

21 record evidence would be important to the Administrator in making his decision" and their "evaluation

22 of the [facts'] relative significance," and therefore production of the documents would violate the

23 privilege against disclosure of an agency decision-maker's mental processes).

24 Contrary to defendant's assertion, the statutory requirement that relators disclose "substantially

25 all material evidence and information" does not mean that disclosure statements are "kitchen sink"

26 documents that indiscriminately catalogue the universe of facts known to the relator (and which

27 therefore could not possibly reveal opinions, theories, or mental impressions). The statute calls for

28 disclosure of "substantially all" of the "material" facts and evidence in the relator's possession. To meet

1 that obligation, the relator and his or her counsel must engage in a process of selecting and winnowing

2 from the totality of information known to the relator only those facts and evidence that are material to

3 the relator's legal claims. Therefore, the factual narratives in the disclosure statements reveal "the

4 mental impressions, conclusions, opinions, or legal theories of" the relator and his or her counsel. See

5 Fed.R.Civ.P. 26(b)(3). For these reasons, the court concludes that the disclosure statements prepared

6 by relator and his counsel in this case (excluding pre-existing documents attached as exhibits thereto)

7 constitute opinion work product.

8          Treating all portions of disclosure statements (except, of course, any exhibits thereto) as opinion

9 work product makes sense for other reasons as well. One problem with some cases holding that

10 disclosure statements are work product is that they have classified disclosure statements as "ordinary"

11 or "factual" work product, rather than as "opinion" work product, see, e. g., Stone, 144 F.R.D. at 401,

12 or have reserved the classification issue for determination following in camera review. See, e. g.,

13 Burroughs, 167 F.R.D. at 684. Only opinion work product, of course, is almost invariably shielded from

14 discovery because it enjoys nearly absolute protection. See Holmgren, 976 F.2d at 576-577 (indicating

15 that "opinion work product may be discovered and admitted when mental impressions are *at issue* in a

16 case and the need for the material is compelling.") (emphasis in original). Ordinary or factual work

17 product, by contrast, is entitled to more limited, qualified protection. See Burroughs, 167 F.R.D. at 683-

18 684; Stone, 144 F.R.D. at 401. This means that when relators are preparing disclosure statements, they

19 cannot determine whether all or part of the disclosure statements ultimately will be turned over to the

20 defendant, even if it is clear that some sort of work product protection is available. This is partly

21 because where the line between opinion work product and ordinary work product should be drawn

22 sometimes is debatable. Moreover, ordinary work product is subject to discovery if the defendant can

23 show "substantial need" and an inability to obtain "the substantial equivalent" without "undue

24 hardship". See Fed.R.Civ.P. 26(b)(3). Not only are these phrases vague and elastic, but a relator seldom

25 will be able to predict with high degree of confidence whether the defendant will be able to meet that

26 test months or even years after disclosure statements are prepared. Faced with this uncertainty about

27 whether all or portions of disclosure statements ultimately may be revealed to the defendant, it would

28 not be surprising if relators prepared disclosure statements that contain the bare minimum necessary to

1   encourage intervention and avoid dismissal, and certainly no analysis, synthesis, commentary, opinions,

2   discussions of legal authorities, and the like.

3          On the other hand, classifying disclosure statements as opinion work product– which means they

4   almost never will have to be turned over to the defendant– encourages relators to include everything that

5   might help the government in evaluating the case, secure in the knowledge that whatever is written will

6   not be seen by the defendant.  It also spares the parties the burden and expense of litigating the

7   discoverability of disclosure statements (or portions thereof), and eliminates the need for judicial in

8   camera review of proposed redactions.[5]  Classifying disclosure statements as opinion work product

9   therefore furthers the purposes of section 3730(b)(2).

10         Defendant contends that production of the disclosure statement concerning the Medium Launch

11  Vehicle III ("MLV III") should be compelled because relator used it to refresh his recollection before

12  testifying at his deposition, even if the work product doctrine otherwise would protect that document

13  from discovery.

14         Rule 612 of the Federal Rules of Evidence states that

15         if a witness uses a writing to refresh memory for the purpose of testifying, either--(1)

16         while testifying, or (2) before testifying, if the court in its discretion determines it is

17         necessary in the interests of justice, an adverse party is entitled to have the writing

18         produced at the hearing, to inspect it, to cross-examine the witness thereon, and to

19         introduce in evidence those portions which relate to the testimony of the witness.

20  Fed.R.Evid. 612.  Rule 612 applies to deposition testimony.  See Fed.R.Civ.P. 30(c) ("Examination and

21  cross-examination of witnesses may proceed as permitted at the trial under the provisions of the Federal

22  Rules of Evidence except Rules 103 and 615."); Sporck, 759 F.2d at 317 (stating that Rule 612 is

23  applicable to deposition testimony); see generally William W Schwarzer, A. Wallace Tashima & James

24  M. Wagstaffe, Rutter Group Practice Guide: Federal Civil Procedure Before Trial ¶ 11:54.1 (2002).

25  "Rule 612 requires that a party meet three conditions before it may obtain documents used by a witness

26  _____

27     [5]   Although a similar argument might be made about the optimal classification of work
    product as either "opinion" or "ordinary" in other contexts, the desirability of promoting the
28  purposes the section 3730(b)(2) makes the argument more compelling in the False Claims Act
    context.

1  prior to testifying: 1) the witness must use the writing to refresh his memory; 2) the witness must use

2  the writing for the purpose of testifying; and 3) the court must determine that production is necessary

3  in the interests of justice." Sporck, 759 F.2d at 317.

4       Relator admitted that he reviewed the MLV III disclosure statement in preparation for his

5  deposition, and he conceded that it refreshed his recollection regarding matters about which he testified.

6  [See Defendant's Supplemental Memorandum at 3-5; Declaration of James E. Gauch in Support of

7  Motion to Compel, Ex. A at 5 (excerpt of deposition testimony of Richard D. Bagley); Declaration of

8  Richard D. Bagley in Opposition to Motion to Compel at 3].  Relator's use of that document to refresh

9  his recollection prior to testifying during his deposition amounts to a limited waiver of work product

10 protection, and production of the MLV III disclosure statement is warranted.  See United States v.

11 Nobles, 422 U.S. 225, 239 & n.14 (1975) (holding that where defense counsel proposed to call his

12 investigator to impeach eyewitness testimony based on the investigator's interview reports, work product

13 protection was waived as to those reports, and explaining that where "counsel attempts to make a

14 testimonial use of these materials the normal rules of evidence come into play with respect to

15 cross-examination and production of documents"); Sperling v. City of Kennesaw Police Dep't, 202

16 F.R.D. 325, 329 (N.D. Ga. 2001)(holding that the plaintiff's use of a document during her deposition

17 to refresh her memory waived work product protection as to that document and entitled the defendant

18 to its production under Rule 612); Nutramax Laboratories, Inc. v. Twin Laboratories Inc., 183 F.R.D.

19 458, 472 (D. Md. 1998)(holding that the deponent's review of documents prior to his deposition to

20 refresh his recollection "constituted a testimonial use of these documents" under Fed.R.Evid. 612, and

21 "resulted in a limited, implied waiver of the attorney work product doctrine as to them").

22      Defendant also contends that although relator recalled reviewing only the MLV III disclosure

23 statement in preparation for his deposition, "it is impossible to be sure" that he did not review others,

24 and that relator's "counsel doubtless can represent whether [relator] reviewed any" others. [Defendant's

25 Supplemental Memorandum at 4-5].  Because defendant has not satisfied the first two foundational

26 elements required by Rule 612, see Sporck, 759 F.2d at 317, there is no basis for granting its request

27 to compel production of any additional disclosure statements pursuant to Rule 612 of the Federal Rules

28 of Evidence.

1    For the reasons explained above, defendant's motion to compel is **granted in part and denied**

2    **in part.** The disclosure statements are opinion work product. Except as to (1) the MLV III disclosure

3    statement, and (2) any disclosure statement (or portion thereof) already revealed to defendant, plaintiffs

4    have not waived work product protection as to the disclosure statements, and defendant has not shown

5    that rare or compelling circumstances exist that might justify abrogating the nearly absolute protection

6    accorded opinion work product. See <u>Holmgren</u>, 976 F.2d at 577; <u>Burroughs</u>, 167 F.R.D. at 683-684.

7    Plaintiffs must produce the MLV III disclosure statement. Defendant may retain and use any portions

8    of any disclosure statement already revealed to it. To the extent that they have not already done so,

9    plaintiffs must produce to defendant any attachments or exhibits to any of the disclosure statements

10   which were not prepared by or for relator or his counsel in anticipation of this litigation or for the

11   purpose of creating the disclosure statements. If an identical copy of an exhibit or attachment already

12   has been produced to defendant, then plaintiffs obviously need not produce it again. Plaintiffs shall

13   comply with this order within eleven (11) days.

14

15   **IT IS SO ORDERED.**

16

17   DATED: _____2.4_____, 2003

18

19

20   _____
     ANDREW J. WISTRICH

21   United States Magistrate Judge

22

23

24

25

26

27

28